MAMY DOUNO
6 Hollywood Avenue
Montclair, NJ 07042
(908) 636-0494

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

2021 AUG 18  A 10: 04

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------X
MAMY DOUNO                                                    JURY TRIAL DEMANDED

                          Plaintiff,                  Civil Case No.:
  -against-

TESLA, INC.

                          Defendant.
-----------------------------------------------------------X

      Plaintiff, Mamy Douno, appearing in this action Pro Se, as and for his complaint against the defendant Tesla, Inc. avers the following:

      1.     That at all times hereinafter mentioned, the Plaintiff was and still is a resident of the State of New Jersey and resides at 6 Hollywood Avenue in Montclair, New Jersey.

      2.     That at all times hereinafter mentioned, the Plaintiff was and is a consumer as defined by every consumer protection law in the State of New Jersey.

      3.     That at all times hereinafter mentioned Tesla, Inc. was a corporation incorporated in the state of Delaware with its principle place of business located in California.

      4.     That at all times hereinafter mentioned the defendant Tesla, Inc was a corporation engaged in the sale and installation of solar products including, but not limited to, solar panels.

      5.     That at all times hereinafter mentioned, the defendant Tesla, Inc. had various offices throughout the State of New Jersey.

      6.     That at all times hereinafter mentioned, Tesla did business throughout the State of New Jersey.

7. This Court has jurisdiction in this action pursuant to 28 U.S. Code § 1332.

8. That prior to May 9, 2020, the Plaintiff desired to have solar panels installed in his home.

9. After doing some research, the Plaintiff decided to hire Tesla, Inc. to install the solar panels in his home.

10. The Plaintiff's decision was based on representations Tesla, Inc. made on various sites on the internet.

11. The representations made by Tesla, Inc. on the internet, unbeknownst to the Plaintiff, were false, misleading and inaccurate.

12. Had it not been for these false, misleading and inaccurate representations, the Plaintiff would have chosen another company to install the solar panels at his home.

13. The Plaintiff's first contact with Tesla was on January 7, 2020 when he dealt with a Tesla employee named Mr. Daniel Platenda.

14. After explaining his needs, desires, costs and expectations and inquiring about his options concerning pricing and power, the Plaintiff was instructed to fill out an online order.

15. The Plaintiff then filled out the online order and gave the defendant a down payment toward his purchase.

16. This constituted a contract with the defendant for the installation of solar panels at his home located at 6 Hollywood Avenue in Montclair, New Jersey for the sum of $19,400.26.

17. Pursuant to this contract the Plaintiff hired the defendant to install solar panels at his home.

18. Pursuant to this contract, the defendant did agree to install solar panels at the Plaintiff's home.

19. Pursuant to this contract, the Plaintiff did agree to pay the defendant the sum of $19,400.26.

20. The Plaintiff, then, did not hear from anyone from Tesla again for an extended period of time.

21. The system the Plaintiff put a down payment on was for 24 315 watts panels with an estimated annual production of 7,491 KWH for $19,400.00.

22. After an extended period of time, he was assigned a new Tesla advisor, Mr. Chris Palkow.

23. After explaining his needs, desires, costs and expectations and inquiring about his options concerning price and power, the Plaintiff was given a number of documents to fill out which were completed and given to Mr. Palkow on January 28, 2020.

24. During this exchange, Mr. Palkow aggressively encouraged the Plaintiff to obtain a Tesla Solar Joan through Tesla's partner, Mosaic.

25. The Plaintiff then applied for and was approved for a Tesla Solar loan through Tesla's partner, Mosaic.

26. Despite preparing the necessary paperwork and being approved for the loan for the solar panels, Tesla employees did nothing toward installing the solar panels for more than a month.

27. The Plaintiff then tried repeatedly to get Tesla to install the panels to no avail.

28. The Plaintiff's repeated requests to get Tesla to perform the work were simply ignored by Mr. Palkow.

29. On February 21, 2020 the Plaintiff, as part of his employment with an international company, was traveling for a mission outside the United States.

30. While in another country, the Plaintiff, out of complete frustration, called Mr. Plakow to ascertain the status of his order.

31. When Mr. Plakow failed to return any of the Plaintiff's phone calls, the Plaintiff left a message for Mr. Plakow informing him that he was going to cancel the contract if he failed to return his call.

32. Mr. Palkow, in his usual fashion, did not return the Plaintiffs phone calls.

33. On March 4, 2020 the Plaintiff, while overseas, received an email informing him that his order was unilaterally cancelled by Tesla.

34. At no time prior to this email had the Plaintiff cancelled this contract.

35. Upon receipt of this email, the Plaintiff, perplexed, immediately called Mr. Palkow, who once again failed to return his call.

36. The Plaintiff then sent Mr. Palkow an email requesting an explanation which Mr. Palko did not respond to.

37. Mr. Palko simply ignored the Plaintiff's inquiry.

38. Tesla and Mr. Palkow's unprofessional response to this point reeks of consumer fraud.

39. When Mr. Palkow failed to respond to the Plaintiff's numerous phone calls and emails, he reached out to Ms. Alessandra Anderson, a Tesla Specialist who worked with Mr. Palkow on his order in an attempt to get an answer as to Tesla's bizarre business practice.

40. Unfortunately, Ms. Aderson was unable to provide the Plaintiff with any useful information other than confirming the fact that that his contract was inexplicably and unilaterally terminated.

41. Plaintiffs contract was, without explanation, terminated by Tesla.

42. Defendant's unilateral termination of the Plaintiffs contract was wrongful and constitutes a breach of contract.

43. During their conversation Ms. Anderson informed the Plaintiff that he could start a new order online.

44. Based on Tesla's actions it is clear that all of the Plaintiffs time and effort to this point were wasted without explanation.

45. Not satisfied with Ms. Anderson's suggestion, the Plaintiff then called Tesla's main number to get an explanation to this bizarre encounter.

46. After giving the history of this transaction to the responding Tesla representative, the Plaintiff was subsequently contacted by Mr. Alan Cuevas.

47. During his conversation with Mr. Cuevas, Mr. Cuevas disingenuously and falsely claimed that that it was the Plaintiff who had cancelled the contract.

48. The Plaintiff then had to waste more time and energy to gather proof that it was Tesla and not he who cancelled the contract.

49. Mr. Cuevas, who was unprofessionally dumbfounded, reinstated the Plaintiffs contract and assigned another advisor to his account.

50. If Tesla was at all concerned with customer satisfaction, they should have reinstated the Plaintiff's contract immediately.

51. From March 16 to May 17, 2020 the Plaintiff then had to provide Tesla with more documentation and applied for a loan with Tesla's partner Mosaic.

52. The new system that the Plaintiff purchased was 24 315 watts panels with an estimated annual production of 6,819 kwh for $19,400.00.

53. On May 8, 2020 the Plaintiff asked the Tesla representative assigned to his contract if there were solar panels larger than the 315 watts panels and was falsely told that there were none.

54. This Tesla representative was either ignorant or blatantly lied to the Plaintiff. This amounts to consumer fraud.

55. The installation of the solar panels was completed on July 9, 2020.

56. The Plaintiff then received an email from the Town of Montclair informing him of the need to have the work performed by Tesla inspected by both Town and by a utility company.

57. Then, on July 16, 2020 the Plaintiff received an email from Mosaic informing him that they had paid $15,529.00 to Tesla for the installation milestone and that the remainder of the bill would be paid after he received authorization from the utility company to turn the system on.

58. While waiting for the inspection to take place, the Plaintiff went on the Tesla website and learned for the first time (during the first week in August) that there had been a price adjustment which was concealed from him by everyone that he dealt with at Tesla.

59. The unit the Plaintiff purchased was now less expensive ($16,400.00 vs $19,400.00) and more powerful (8.16 kwh vs 7.56).

60. Despite expressing his needs and desires and inquiring about his options concerning pricing and power with Tesla representatives, they concealed from him the price adjustment for a more powerful model. Tesla basically lied to the Plaintiff.

61. Tesla's conduct constitutes deceptive business practice which amounts to consumer fraud.

62. On August 12, 2020 the Plaintiff sent an email to Mr. Cuevas requesting a price adjustment which Mr. Cuevas ignored.

63. On August 14, 2020 the Plaintiff sent an email to Ms. Anderson requesting a price adjustment.

64. Ms. Anderson responded to Plaintiffs request by informing him he could not get a price adjustment because he was outside a make-believe 30-day window. This also constitutes another ground of consumer fraud.

65. Ms. Anderson's response was beyond disingenuous because the Plaintiff was not never informed of the price adjustment, in fact it was concealed from him which constitutes consumer fraud.

66. The Plaintiff was never informed of this 30-day requirement which was also concealed from him and constitutes another ground of consumer fraud.

67. In light of the fact that the Plaintiff learned of the price adjustment during the first week of August and requested the price adjustment less than a week later, he could not possibly be outside Tesla's fabricated 30-day window. This too constitutes another ground of consumer fraud.

68. It is clear that Tesla employees were making stuff up as they dealt with the Plaintiff.

69. The actions taken by Tesla during this simple transaction were unprofessional and replete with consumer fraud.

70. The Plaintiff repeats each of the foregoing paragraphs as if reiterated here.

71. Tesla's actions constitute breach of contract.

72. Tesla breached its contract with the Plaintiff.

73. As a result of the defendant's breach of its contract with the Plaintiff, the Plaintiff suffered damages in the amount of $19,400.00.

74. During this transaction the defendant committed multiple grounds of consumer fraud.

75. As a result of defendant's multiple acts of consumer fraud the Plaintiff was damaged in the amount of $19,400.00.

76. During this transaction the defendant misrepresented many material facts to the Plaintiff.

77. As a result of defendant's material representations, the Plaintiff was damaged in the amount of $19,400.00.

78. Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff demands judgment against the Defendant, in a sum exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction, together with the costs and disbursements of this action and as follows:

Breach contract..................................................................................$19,400.00

Consumer Fraud................................................................................$19,400.00

Material Misrepresentations..............................................................$19,400.00

Attorney's Fee...................................................................................$19,400.00

Costs and disbursement..................................................................to be determined.

Dated: Montclair, New Jersey
July 16, 2021

MAMY DOUNO